**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALANA HEALTHCARE, LLC,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 20-4628** |
| **CIGNA CORPORATE SERVICES, LLC,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                   **December 21, 2021**

Defendant Cigna Corporate Services, LLC has moved to partially dismiss Alana

Healthcare, LLC's Amended Complaint for failure to state a claim.[1] Cigna's Partial Motion to

Dismiss will be granted with respect to Alana's claims for tortious interference with a

prospective contract and fraud, and it will be denied with respect to Alana's claim for breach of

contract.

### I.   BACKGROUND

Alana's Amended Complaint alleges the following facts, which are accepted as true for

the purposes of evaluating Cigna's Partial Motion to Dismiss.[2] On May 3, 2018, Alana, a

healthcare management company, entered a contract with Cigna, a health insurance company, to

provide services to Cigna-HealthSpring plan members diagnosed with Chronic Obstructive

---

[1] Def.'s Partial Mot. Dismiss Pl.'s Am. Compl. [Doc. No. 24].

[2] *See Klotz v. Celentan Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021).

Pulmonary Disease and similar conditions.[3] The contract required Cigna to refer all members with a qualifying diagnosis to Alana's program.[4] Alana expanded its operations in ten states to meet anticipated demand for its services under the contract, which was expected to produce 2,000 to 3,000 referrals each month.[5] After delivering a file containing 30,000 member referrals in August 2018, Alana received an average of only 350 referrals each month between November 2018 and November 2019.[6]

The Amended Complaint alleges that Cigna misrepresented the reason for the lower-than-anticipated volume of referrals as being related to a technical issue, which induced Alana to continue performing under the contract.[7] Instead, Alana alleges that Cigna referred eligible members to other providers' programs.[8] Alana claims losses of $14.7 million due to Cigna's failure to refer all eligible members to its program.[9] Alana further claims losses of more than $50 million from the failure of a prospective acquisition of Alana that was never consummated due to low referral volumes.[10] Alana brings claims for breach of contract, fraud, and tortious interference with a prospective contract based on Cigna's alleged conduct.[11]

--------

[3] Am. Compl. [Doc. No. 21] ¶¶ 9–13. The contract consisted of a Master Services Agreement and a Statement of Work. Am. Compl. [Doc. No. 21] ¶ 13. The Statement of Work was amended on June 11, 2018. Am. Compl. [Doc. No. 21] ¶ 13.

[4] Am. Compl. [Doc. No. 21] ¶¶ 16, 18.

[5] Am. Compl. [Doc. No. 21] ¶¶ 17.

[6] Am. Compl. [Doc. No. 21] ¶¶ 19–20.

[7] Am. Compl. [Doc. No. 21] ¶¶ 40, 42.

[8] Am. Compl. [Doc. No. 21] ¶¶ 40, 42.

[9] Am. Compl. [Doc. No. 21] ¶¶ 22.

[10] Am. Compl. [Doc. No. 21] ¶¶ 23.

[11] Am. Compl. [Doc. No. 21] ¶¶ 31–56.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows claims to be dismissed when a plaintiff fails "to state a claim upon which relief can be granted."[12] Rule 8(a)(2) requires that each complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief," while Rule 9(b) requires that complaints alleging fraud "must state with particularity the circumstances constituting fraud."[13] The complaint should therefore "place the defendant on notice of the 'precise misconduct with which [it is] charged.'"[14] The rationale behind these rules is that the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[15]

Further, every pleading must "state a claim to relief that is plausible on its face."[16] "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17] When determining whether a complaint satisfies this requirement, the Court will "accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party."[18]

---

[12] Fed. R. Civ. P. 12(b)(6).

[13] Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 9(b).

[14] *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) (alterations original).

[15] *Twombly*, 550 U.S. at 545.

[16] *Id.* at 557; Fed. R. Civ. P. 8(a)(2).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[18] *Klotz*, 991 F.3d at 462 (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)).

## III.   DISCUSSION

### A.  Gist of the Action Doctrine

Cigna first seeks to dismiss Alana's fraud and tortious interference claims under the "gist of the action" doctrine. Under Pennsylvania law, which the parties agree governs this dispute, the gist of the action doctrine "ensure[s] that a party does not bring a tort claim for what is, in actuality, a claim for a breach of contract."[19] Pennsylvania courts look to "the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint."[20] "If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract . . . then the claim is to be viewed as one for breach of contract."[21] In contrast, where "the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort."[22] The parties' contractual relationship does not preclude a plaintiff from stating a viable tort claim.[23]

#### 1.   *Tortious Interference with a Prospective Contract Claim*

The tortious interference claim is based on the allegations that Cigna knew that Alana executed a Letter of Intent with two investor groups that were interested in purchasing Alana, and that "Cigna intentionally withheld or redirected the referrals with the intent of undermining the acquisition of Alana."[24] Cigna contends that the alleged duty underlying this claim—that

---

[19] *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 60 (Pa. 2014).

[20] *Id.* at 68.

[21] *Id.* (citations omitted).

[22] *Id.* (citations omitted)

[23] *Id.* at 69.

[24] Am. Compl. [Doc. No. 21] ¶ 53.

Cigna was required to refer all eligible members to Alana's program—is purely contractual and must therefore be dismissed under the gist of the action doctrine.[25] Alana argues that this "claim is unique and, while related to the breach of contract claim, stands on its own."[26]

The Amended Complaint does not allege, and the Court cannot reasonably infer, that Cigna breached a societal duty by allegedly failing to fulfill its contractual obligation to refer all eligible members to Alana's program. Although Alana argues that this claim "can be proven without reliance on its contract with Cigna," the Amended Complaint alleges that "[t]he primary reason the acquisition did not close was the investor groups' mounting concerns over the instability of Cigna's referral volumes."[27] Accordingly, the claim depends on the allegation that the investors did not go through with the purchase because Cigna breached the contract. Given that "the facts of [this] particular claim establish that the duty breached is one created by the parties by the terms of their contract," the Court will dismiss the tortious interference claim under the gist of the action doctrine.[28]

   2.  *Fraud by Misrepresentation, Concealment, and Inducement Claim*

The fraud claim is based on the allegation that Cigna intentionally misrepresented that low referral numbers were the result of a technical issue when Cigna was referring its members elsewhere.[29] Alana alleges that Cigna's misrepresentation induced Alana to continue performing

---

[25] Def.'s Mem. L. Supp. Def.'s Mot. Dismiss Pl.'s Am. Compl. [Doc. No. 24-2] at 7–8.

[26] Pl.'s Resp. Opp'n Def.'s Partial Mot. Dismiss Pl.'s Am. Compl. [Doc. No. 26] at 10.

[27] Am. Compl. [Doc. No. 21] ¶ 55; Pl.'s Resp. Opp'n Def.'s Partial Mot. Dismiss Pl.'s Am. Compl. [Doc. No. 26] at 10.

[28] *Bruno*, 106 A.3d at 68.

[29] Am. Compl. [Doc. No. 21] ¶ 40.

under the contract, and that it incurred substantial staffing costs to meet the anticipated demand.[30] Alana argues that the fraud claim is collateral to the performance of the contract.[31]

Federal and state courts have not uniformly applied the Pennsylvania gist of the action doctrine to claims involving misrepresentation.[32] However, when a tort claim implicates "a breach of 'a societal duty not to affirmatively mislead or advise without factual basis,'" some courts have declined to dismiss such claims in the early stages of litigation.[33] Here, the Amended Complaint alleges that Cigna affirmatively misrepresented the reason for its breach, which goes beyond allegations that Cigna failed to fulfill a contractual obligation. At this early stage, taking all allegations as true and construing them in the light most favorable to Plaintiff, the Court declines to dismiss Alana's fraud claim on this basis.

### B.  Particularity of Fraud Claim

Cigna next contends that the Court should dismiss Plaintiff's fraud claim because Alana has failed to meet the pleading requirements outlined in Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or

---

[30] Am. Compl. [Doc. No. 21] ¶¶ 40, 42–43.

[31] Pl.'s Resp. Opp'n Def.'s Partial Mot. Dismiss Pl.'s Am. Compl. [Doc. No. 26] at 5.

[32] *See Downs v. Andrews*, 639 F. App'x 816, 820 (3d Cir. 2016) ("Pennsylvania state and federal courts have reached different conclusions about whether the gist of the action doctrine applies to fraudulent inducement claims."); *Ohama v. Markowitz*, 434 F. Supp. 3d 303, 319–20 (E.D. Pa. 2020) (compiling cases that reached different conclusions regarding the application of the doctrine to fraudulent inducement claims).

[33] *See Bruno*, 106 A.3d at 58 (citing *Am. Guarantee v. Fojanini*, 90 F. Supp. 2d 615, 623 (E.D. Pa. 2000); and then citing *Mendelsohn Drucker v. Titan Atlas Mfg.*, 885 F. Supp. 2d 767, 790 (E.D. Pa. 2012)). *See also College v. Synergis Educ. Inc.*, No. 14-06966, 2015 WL 5783682, at *4 (E.D. Pa. Oct. 5, 2015) (finding that the gist of the action doctrine did not bar a misrepresentation claim where "[Plaintiff's] allegations establish that [Defendant] 'not only breached the contract, but also made misrepresentations about the breach with the intent to deceive' [Plaintiff] into 'continu[ing] the contractual relationship' and declining 'to assert its contractual rights against the defendant.'").

mistake."[34] Although this does not necessitate pleading "every material detail of the fraud such as date, location, and time, plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'"[35] The Pennsylvania Supreme Court has held that:

> Fraudulent (or intentional) misrepresentation requires the plaintiff to prove six elements: (1) a representation; (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or reckless disregard as to whether it is true or false; (4) with the intent to mislead another person into relying on it; (5) justifiable reliance; and (6) an injury proximately caused by the reliance.[36]

Additionally, under Pennsylvania law, the tort of fraudulent concealment requires a plaintiff to demonstrate that:

> (1) [Defendant caused] an omission; (2) the omission was material to the transaction at hand; (3) the omission was made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) the omission was made with the intent of misleading another into relying on it; (5) the plaintiff justifiably relied on the omission; and (6) the resulting injury was proximately caused by the reliance.[37]

The Amended Complaint alleges that Cigna misrepresented that its low referral volumes resulted from a technical issue, and that this misrepresentation was made to "Alana executives" by "members of Cigna's National Health Services Team" during "weekly and monthly"

---

[34] Fed. R. Civ. P. 9(b).

[35] *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002) (quoting *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 577 (D.N.J. 2001)).

[36] *Gregg v. Amirprise Fin., Inc.*, 245 A.3d 637, 645–46 (Pa. 2021) (citation omitted). The elements of fraudulent inducement are nearly identical to the elements of intentional misrepresentation. *See EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 275 (3d Cir. 2010). Although Plaintiff does not specifically characterize its fraud claim as intentional misrepresentation or fraudulent inducement, the Court will construe it as such because Plaintiff's allegations track these six elements.

[37] *Marcum v. Columbia Gas Transmission, LLC*, 423 F. Supp. 3d 115, 121 (E.D. Pa. 2019) (citing *Gaines v. Krawczyk*, 354 F. Supp. 2d 573, 587 (W.D. Pa. 2004) (alterations original)).

meetings from September 2018 into 2019.[38] Alana alleges that this "misrepresentation was . . . intentionally false," and that it "justifiably relied on this misrepresentation by . . . continuing to perform under the contract and continuing to incur substantial costs building out and maintaining its staffing infrastructure to meet the referral volume expected under the contract."[39] Alana also alleges that Cigna had a duty to disclose the real reason for the low referral volumes, but did not do so.[40] The Amended Complaint therefore alleges that "Cigna concealed from Alana and/or failed to disclose . . . the true reasons" for the breach.[41]

Cigna argues that Alana's Amended Complaint attempts to plead multiple theories of fraud, which defeats the particularity requirement in Rule 9(b).[42] Cigna also contends that the Amended Complaint does not identify the individuals involved, provide the specific dates of the alleged conduct, or offer sufficient details about the meetings in which misrepresentations occurred.[43] In response, Alana contends that its "allegations properly assert the who, what, where, when, and how of its fraud claim, so as to sufficiently alert Cigna to the fraudulent conduct."[44]

The Amended Complaint presents a straightforward theory of fraudulent misrepresentation: 1) Cigna represented that low referral volumes resulted from a technical issue, 2) this representation was material to the parties' contract, 3) Cigna was aware that this

---

[38] Am. Compl. [Doc. No. 21] ¶ 40.

[39] Am. Compl. [Doc. No. 21] ¶ 41–43.

[40] Am. Compl. [Doc. No. 21] ¶ 44–46.

[41] Am. Compl. [Doc. No. 21] ¶ 44.

[42] Def.'s Mem. Law Supp. Def.'s Partial Mot. Dismiss Pl.'s Am. Compl. [Doc. No. 24-2] at 8.

[43] Def.'s Mem. Law Supp. Def.'s Partial Mot. Dismiss Pl.'s Am. Compl. [Doc. No. 24-2] at 9.

[44] Pl.'s Resp. Opp'n Def.'s Partial Mot. Dismiss Pl.'s Am. Compl. [Doc. No. 26] at 11.

representation was false, 4) Cigna intended to induce Alana to continue performing under the contract, 5) Alana justifiably relied on the misrepresentation by continuing to maintain its operations to serve a larger number of members, and 6) Alana suffered damages as a result.[45] The allegations in the complaint are also consistent with the elements of fraudulent inducement and fraudulent concealment, both of which are similar to fraudulent misrepresentation.[46]

Yet Alana's fraud claim fails to meet Rule 9(b)'s particularity requirement. The Amended Complaint describes the specific misrepresentation at issue and provides limited context as to the time period and circumstances under which the misrepresentation was made. However, it offers no information about the members of "Cigna's National Health Services Team," which could presumably include numerous Cigna employees. Moreover, the dates outlined in the Amended Complaint span two years, making it difficult to ascertain how frequently this misrepresentation allegedly occurred. Although specific employees' names and precise dates are not necessarily required to plead fraud with particularity, these ambiguous

---

[45] *See Gregg*, 245 A.3d at 645–46 (Pa. 2021) (citation omitted).

[46] *See EBC, Inc.*, 618 F.3d at 275; *Gregg*, 245 A.3d at 645–46; *Marcum*, 423 F. Supp. 3d at 121 (citing *Gaines*, 354 F. Supp. 2d at 587).

Cigna's contention that Alana has failed to plead a coherent theory of fraud misconstrues the requirements of Rule 9(b). The allegations in the Amended Complaint offer a clear picture of allegedly fraudulent conduct that could fit the elements of multiple fraud claims under Pennsylvania law. This situation is therefore distinguishable from cases in which plaintiffs' factual allegations were so unclear that they did not provide defendants "notice of the precise misconduct with which they are charged." *See Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557; *see, e.g., Birchall v. Countrywide Home Loans, Inc.*, No. 08-2447, 2009 WL 3822201, at *8 (E.D. Pa. 2009) ("[Plaintiff] asserts generally that the 'Defendant misrepresented and/or omitted material facts to Plaintiff, including the aforesaid'— with 'the aforesaid' apparently referring to any of the facts alleged anywhere in the body of the pleading."); *Rubenstein v. Dovenmuehle Mortg., Inc.*, No. 09-721, 2009 WL 3467769, at *5 (involving a complaint in which "[p]laintiffs aver[red] twice that defendant made 'false representations from time to time'" without giving additional context).

allegations do not lend sufficient "precision and . . . substantiation" to Alana's fraud claim under Rule 9(b).[47] Accordingly, Alana's fraud claim will be dismissed without prejudice.

### C. Breach of Contract Claim

Cigna finally argues that the Court should partially dismiss Alana's breach of contract claim. A breach of contract claim under Pennsylvania law includes three elements: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages."[48] When interpreting a contract, "the intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement."[49] Accordingly, "where language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as *manifestly expressed*."[50]

Cigna argues that the parties' contract did not require Cigna to provide Alana with a minimum number of referrals, and that the claim should be dismissed to the extent that it relies on this allegation.[51] In response, Alana asserts that its Amended Complaint does not allege that

---

[47] *See Frederico*, 507 F.3d at 200–01 (affirming dismissal of plaintiff's fraud claim where the complaint lacked "any information about[] the particular individual" who made an alleged misrepresentation); *Klein v. General Nutrition Co., Inc.*, 186 F.3d 338, 345 (3d Cir. 1999) ("The complaint fails to attribute the statement to any specific member of [defendant's] management. [Rule] 9(b) requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements."). There is no indication that more specific information about who made the alleged misrepresentations is inaccessible to Alana. *See In re Burlington Coat Factory Sec. Litig.* 114 F.3d 1410, 1418 (3d Cir. 1997) (citing *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 285 (3d Cir. 1992)) ("[T]he normally rigorous particularity rule has been relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control.").

[48] *Ware v. Rodale Press, Inc*., 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)) (brackets omitted).

[49] *Steuart v. McChensney*, 444 A.2d 659, 661 (Pa. 1982) (citations omitted).

[50] *Id.*

[51] Def.'s Mem. Law Supp. Def.'s Partial Mot. Dismiss Pl.'s Am. Compl. [Doc. No. 24-2] at 11–12.

such a term existed.[52] Instead, Alana argues that its breach of contract claim depends on Cigna's alleged "contractual obligation to refer all Cigna-HealthSpring members in Alana's participating markets who had met a particular set of diagnoses."[53]

Plaintiff's allegations satisfy the three elements required for a breach of contract claim under Pennsylvania law. The Amended Complaint alleges that 1) the parties' contract expressly required Cigna to refer all members with a qualifying diagnosis to Alana's program, 2) Cigna breached this duty by failing to refer all eligible members, and 3) Alana incurred damages as a result.[54] Although the Amended Complaint notes that Alana anticipated "2,000 to 3,000 Cigna-HealthSpring plan member referrals per month," Alana does not allege that Cigna had an obligation to provide a specific number of referrals.[55] Therefore, Defendant's request to partially dismiss Plaintiff's breach of contract claim will be denied.[56]

## IV.   CONCLUSION

Cigna's Partial Motion to Dismiss will be granted to the extent that Alana's tortious interference with a prospective contract and fraud claims will be dismissed. The motion will be denied with respect to Plaintiff's breach of contract claim. An appropriate order will be entered.

---

[52] Pl.'s Resp. Opp'n Def.'s Partial Mot. Dismiss Pl.'s Am. Compl. [Doc. No. 26] at 3.

[53] Pl.'s Resp. Opp'n Def.'s Partial Mot. Dismiss Pl.'s Am. Compl. [Doc. No. 26] at 3 (emphasis omitted).

[54] Am. Compl. [Doc. No. 21] ¶¶ 34–36, 38.

[55] Am. Compl. [Doc. No. 21] ¶ 18.

[56] Cigna contends that, given Alana's characterization of its breach of contract claim, "Alana should be estopped from asserting" that the contract required a minimum number of referrals per month. Def.'s Mem. L. Further Supp. Def.'s Mot. Dismiss Pl.'s Am. Compl. [Doc. No. 27] at 8. Cigna has not shown that any theory of estoppel is applicable at this time.